IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-CV-989-MAB |
| | ) |
| ANGELA CRAIN, JILIAN CRANE, and ANTHONY WILLS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motions for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants Angela Crain, Jill Crane, and Anthony Wills (Docs. 41, 48). To date, Plaintiff Joshua Jones has not filed a response to either motion. For the reasons explained below, the motions are granted and this matter is dismissed without prejudice due to Plaintiff's failure to exhaust his administrative remedies prior to filing suit.

### BACKGROUND

Plaintiff Joshua Jones (inmate number Y31655) filed this civil rights case in March 2024 pursuant to 42 U.S.C. § 1983 alleging that prison officials and medical providers at Menard Correctional Center provided him with constitutionally inadequate medical care for his knee pain (Doc. 1). The initial complaint was dismissed for failure to state a claim, but Plaintiff was granted leave to submit an amended pleading, (Doc. 13), which he did on July 1, 2024 (Doc. 16). Following a threshold review of the first amended complaint

under 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on an Eighth Amendment deliberate indifference claim against Angela Crain (whom Plaintiff identifies as the "head nurse"), Jill Crane (whom Plaintiff identifies as a nurse practitioner), and Warden Anthony Wills for delaying Jones's access to medical care and his requests for assistive items, permits, and pain medication (Doc. 17).

The pertinent factual allegations are that Plaintiff began experiencing pain in his left knee in 2020 (Doc. 17; *see also* Doc. 16, p. 6). He was given Tylenol and other over-the-counter pain medications, which failed to control his pain (Doc. 16, p. 6). Sometime in the winter of 2021-2022, Plaintiff received an x-ray, which was negative for a fracture (*Id.*). Sometime in 2022, he spoke to head nurse Angela Crain about his continued pain and requested immediate care (*Id.*) Crain told Plaintiff that he would have to wait awhile to be seen because the prison healthcare unit was short-staffed (*Id.*). Plaintiff eventually received an MRI of his knee on an unspecified date, but he alleges that he was never told the results of the MRI (*Id.*).

Plaintiff alleges that he submitted a grievance in March 2023 about his left knee pain and requesting the results of his MRI (Doc. 16, p. 6). Warden Anthony Wills deemed the grievance an emergency (*Id.* at pp. 6-7). Plaintiff alleges that about thirty days after the grievance was deemed an emergency, he received the results of his MRI (*Id.* at p. 7). He was then taken to see an orthopedist in October 2023 (*Id.*). The doctor diagnosed Plaintiff with a torn meniscus and said that he would be scheduled for surgery (*Id.*).

Plaintiff subsequently requested a low bunk permit, a walking aid, and prescription pain medication for his injuries (Doc. 16, p. 7). His requests were made to

Defendants Angela Crain, Jill Crane, and Anthony Wills, but they all denied his requests (*Id.*). In December 2023, Plaintiff saw an orthopedic surgeon, and told the surgeon that he needed a low bunk permit, low gallery permit, a walking aid, physical therapy, and prescription pain medications (*Id.* at p. 8). The surgeon assured Plaintiff that he would speak with the head nurse and nurse practitioner at the prison in order to ensure that Plaintiff received the requested items (*Id.*). Plaintiff alleges, however, that he never received any of his requested items or services by the time he filed this lawsuit in March 2024.

Defendant Jillian Crane filed her motion for summary judgment on the issue of exhaustion on February 24, 2025 (Doc. 41; *see also* Doc. 42). She argues that there is only one fully-exhausted grievance pertaining to Plaintiff's knee pain, but it pre-dated her alleged misconduct by about seven months and describes conduct factually distinct from her alleged misconduct (Doc. 42, pp. 7–9). Crane provided Plaintiff with the requisite Rule 56 Notice advising him of the consequences of failing to respond to the motions for summary judgment and the necessity of supporting his response with affidavits or other documentary evidence (Doc. 43). *See Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996); *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). Plaintiff's response was due on March 31, 2025, but he never filed one or sought an extension of time to do so. *See* SDIL-LR 7.1(b)(1) (providing 30 days to respond to motion for summary judgment); FED. R. CIV. P. 6(d) (giving additional three days when service is made by mail).

Defendants Angela Crain and Anthony Wills filed their motion for summary

judgment on the issue of exhaustion on April 16, 2025 (Doc. 48). They agree with Jillian Crane that there is only one fully exhausted grievance pertaining to Plaintiff's knee pain (Doc. 48, p. 4). They argue that the grievance does not mention any of their alleged misconduct that occurred before Plaintiff submitted the grievance, and it is insufficient to exhaust as to their alleged misconduct that came after Plaintiff submitted the grievance (*Id.* at pp. 8–9). They likewise provided Plaintiff with a Rule 56 Notice (Doc. 49). Plaintiff's response was due on May 19, 2025, but he never filed one or sought an extension of time to do so. *See* SDIL-LR 7.1(b)(1); FED. R. CIV. P. 6(d).[1]

### DISCUSSION

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has held that disputed factual questions

---

[1] In fact, the Court has not heard from Plaintiff in any capacity since December 26, 2024, when he filed a motion asking for additional time to serve his initial disclosures (Doc. 39).

can and should be resolved by the judge (rather than a jury) as a preliminary matter in an evidentiary hearing known as a "*Pavey* hearing." *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). *Accord Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015); *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). But when a prisoner does not raise sufficient factual allegations to demonstrate a genuine dispute of material fact, then no evidentiary hearing is necessary. *Jackson v. Esser*, 105 F.4th 948, 957 (7th Cir. 2024) (citing *Smallwood*, 59 F.4th at 318).

Here, there is no dispute of material fact that necessitates a hearing because Plaintiff's failure to respond to the motion for summary judgment is deemed an admission that Defendants' version of the facts is true. SDIL-LR 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed."). That being said, Defendant "still ha[s] to show that summary judgment [is] proper given the undisputed facts . . . ." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286

F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Failure to do so means failure to exhaust. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

As an inmate in the IDOC, Plaintiff was required to follow the three-step grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The undisputed facts are that there Plaintiff only filed one grievance pertaining to his knee issues prior to filing suit: emergency grievance #448-3-23, which is dated March 28, 2023 (Doc. 42, p. 3; Doc. 48, p. 4; *see* Doc. 42-1, pp. 2–6). There is no dispute that this grievance went through every step of the grievance process (*see* Docs. 42, 48). The question the Court must answer is whether the content of the grievance was sufficient to cover the claims in this case. The administrative regulations require a prisoner's grievance to "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(b). In short, the grievance must provide sufficient information to identify the defendant as the target of the complaint or to implicate them in the alleged wrongdoing. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (explaining "fatal defect" in grievance was "the absence of anything in it to indicate that [the defendant] was the target.").

In emergency grievance #448-3-23, Plaintiff states that he has had knee pain for a couple of years (Doc. 42-1, pp. 4–5). He says he was initially given Tylenol and other pain medications. When the pain became "constant and unbearable," an x-ray was ordered, which did not show anything. He was then started in physical therapy, which only

provided short-term relief. An MRI was also ordered but he says he had yet to see the results over three months later. His former physical therapist told him the results were not even in the facility. He also says that he has never received any lay-ins and all of his sick call requests are either ignored or he is called to be seen on yard day, which forces him to have to choose between going to yard or being seen for his knee pain. He asks to be seen to get the results of his MRI and to be prescribed anything that could help with his pain.

The warden deemed the grievance an emergency on April 3, 2023 (*see* Doc. 42-1, p. 4). The next day, the grievance was received in the grievance office for processing and forwarded to the Health Care Unit for review (*Id.* at p. 3). Despite the emergency nature of the grievance, the Director of Nursing, Connie Dolce, did not respond until August 2, 2023 (*Id.* at p. 6). She indicated that Plaintiff was scheduled for physical therapy on September 29 and October 6, 2022, but refused the appointments. He also refused to be seen at nurse sick call on March 23, 2023. Dolce stated that Plaintiff would be scheduled to be seen by a nurse practitioner. The grievance officer then recommended that the grievance be marked as resolved (*Id.* at p. 3). The warden concurred on August 16, 2023 (*Id.*). Plaintiff appealed to the ARB, who denied his grievance after finding that the issue was appropriately addressed by officials at Menard (*Id.* at p. 2).

The Court agrees with Defendants that this grievance is insufficient to exhaust Plaintiff's claim against them. Most of Defendants' alleged misconduct took place after Plaintiff filed his grievance. The only thing that happened before was that Angela Crain supposedly told Plaintiff sometime in 2022 that he would have to wait awhile to be seen

for his knee pain (*see* Doc. 16). There is, however, no mention in the grievance of Angela Crain or anything that she said, nor is there anything that suggests she was the target of this grievance (*see* Doc. 42-1, pp. 4–5). The rest of Defendants' alleged conduct at issue in this lawsuit, which consists of them denying Plaintiff's requests for a low bunk permit, a walking aid, and prescription pain medication, did not occur until more than six months after Plaintiff filed his grievance. It was therefore impossible for Plaintiff to have mentioned it in the grievance.

Moreover, this is *not* an instance where an additional grievance would *not* be necessary because the allegations involve a continuing violation. When a case involves a continuing violation, the prisoner "need not file multiple, successive grievances raising the same issue" because "once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). *See also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) (holding prisoner was "not required to initiate another round of the administrative grievance process on the exact same issue each time another request for an orthopedic consultation was denied [by a new doctor]."). Separate grievances are only required if the underlying facts or the complaints about particular incidents are different. *Turley*, 729 F.3d at 650. *See also Moore v. Bennette*, 517 F.3d 717, 728–29 (4th Cir. 2008) (where prisoner alleged a pattern of inadequate medical care for various medical conditions, his grievances about his pancreatic condition and hepatitis C did not also exhaust his claims about his gout) (*cited by Turley*, 729 F.3d at 650); *Johnson v. Johnson*, 385 F.3d 503, 521 n.13 (5th Cir. 2004) ("[W]e do not here hold that a grievance filed in

response to one particular incident automatically exhausts claims that arise from future incidents of the same general type. Thus, an inmate who claims to have been beaten by guards (or, for that matter, not protected by guards) once one month and again the next month can rightfully be expected to grieve both incidents . . . .").

Plaintiff's grievance complains about the failure to provide him with his MRI results, lay-in permits, and his inability to be seen at nurse sick call. In response to his grievance, he was provided with the MRI results and sent to see an orthopedist. It was only after that that Plaintiff made requests to Defendants for a low bunk permit, a walking aid, and prescription pain medication for his injuries, which they refused to provide. While the issues Plaintiff complained about in the March 2023 grievance and the conduct of Defendants some six-plus months later both involve incidents of inadequate care for Plaintiff's knee problems, they do not suggest a single and continuous course of mistreatment. Rather they are discrete and separate instances. And it is not unreasonable or unrealistic to require Plaintiff to submit separate grievances for incidents that occurred some six months apart and involved different complaints. *See Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (explaining that a violation is continuing "when it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct.").

In sum, the Court finds that Plaintiff's grievance is insufficient to exhaust his claim against Defendants and Defendants are entitled to summary judgment.

## CONCLUSION

The motions for summary judgment on the issue of exhaustion of administrative

remedies filed by Defendants Angela Crain, Jill Crane, and Anthony Wills (Docs. 41, 48) are **GRANTED.** This action is **DISMISSED without prejudice** due to Plaintiff's failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: September 29, 2025**

s/ Mark A. Beatty  
**MARK A. BEATTY**  
**United States Magistrate Judge**

## NOTICE

Plaintiff is advised that this is a final decision ending his case in this Court. If Plaintiff wishes to contest this decision, he can appeal to the Seventh Circuit by filing a notice of appeal in the district court *within 30 days* of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). This deadline can be briefly extended upon a motion demonstrating excusable neglect or good cause. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Plaintiff also has the option—prior to filing a notice of appeal—of filing a post-judgment motion under Rule 59(e) or Rule 60 asking the undersigned to reconsider the judgment. Any such motion, so long as it is in proper form and timely filed, will stop the clock for filing a notice of appeal until the district court has decided the motion. FED. R. APP. P. 4(a); *Robinson v. Sweeny,* 794 F.3d 782, 783 (7th Cir. 2015). To be "proper," the motion must state the grounds for relief from the adverse judgment. *Robinson*, 794 F.3d at 783.[2] To be timely, the motion must be filed within 28 days of the entry of judgment, and that deadline *cannot* be extended. FED. R. APP. P. 4(a)(4)(A)(iv), (vi); FED. R. CIV. P. 59(b); FED. R. CIV. P. 6(b)(2); *Banister v. Davis*, 590 U.S. 504, 507 (2020). Once the motion is ruled on, the 30-day clock to file a notice of appeal will begin anew. *Banister*, 590 U.S. at

---

[2] *Accord Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014) (motion will toll time to appeal so long as it contains an identifiable and substantive reason for reconsidering); *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010) (in order to toll time for filing notice of appeal, motion must comply with Rule 7.1(b)(1) and "state with particularity the grounds for seeking the order" and "the relief sought").

508 (citing FED. R. APP. P. 4(a)(4)(A)(iv)).

The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).